UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-61687-Civ-COHN
        (11-60257-Cr-COHN)
MAGISTRATE JUDGE P. A. WHITE

RICHARD VIATOR,                     :

        Movant,                     :

v.                                  :          REPORT OF
                                               MAGISTRATE JUDGE
UNITED STATES OF AMERICA,           :

        Respondent.                 :
_____      :

## I.  Introduction

This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, challenging the lawfulness of his sentence following a guilty plea entered in Case No. 11-60257-Cr-Cohn.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Cases in the United States District Courts.

The Court has reviewed the motion (Cv-DE# 1); the government's response to an order to show cause with supporting exhibits (Cv-DE# 7, 8, 14); the Movant's replies (Cv-DE# 18, 20); the Presentence Investigation Report ("PSI") and Addenda thereto; and all pertinent portions of the underlying criminal file.

## II.  Claims

Viator alleges that his sentence is unlawful, because:

(a)  he was entitled to receive a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. §3E1.1,

(b)   he was entitled to receive a total sixteen-level reduction in the calculation of his offense level pursuant to U.S.S.G. §§5K1.1 and 3E1.1, and

(c)   he is now entitled to a sentence reduction pursuant to U.S.S.G. §1B1.10 under the 18:1 and 100:1 ratio announced in Dorsey v. United States, ___ U.S. ___, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012).

III.   <u>Factual Background and Procedural History</u>

A.   <u>Facts of the Offense</u>[1]

In June 2011, Drug Enforcement Administration ("DEA") agents received information that Frank Rodriguez was seeking buyers for multiple kilograms of cocaine. A confidential source ("CS") and a task force officer, acting in an undercover capacity ("UC"), met with Rodriguez to discuss a future transaction of powder cocaine. During that recorded meeting, the UC told Rodriguez he was looking for a local cocaine source of supply. Discussions took place regarding the quantity of cocaine to be purchased and the price per kilogram of cocaine. Rodriguez showed the UC and CS a sample of the powder cocaine which was stored in his car. Between June and October 2011, multiple telephone conversations and meetings took place between Rodriguez and the UC.

On October 5, 2011, the UC spoke to Rodriguez by telephone. During the call, Rodriguez stated the "stuff is here," referring to one kilogram of cocaine. A meeting place was ultimately arrived at and the UC advised the surveillance units that Rodriguez had arrived in the parking lot of Champs restaurant, Fort Lauderdale, Florida. Rodriguez exited his vehicle carrying a red and black backpack and walked over to the front passenger side of the UC's vehicle. At that time, the UC gave the verbal arrest signal.

---

[1] A more extensive recitation of the facts of this case can be obtained from the executed written factual proffer, which Viator stipulated were accurate during the change of plea proceeding, and the Presentence Investigation Report at ¶¶8-22, 24.

Inside the vehicle were three other individuals, Carlos Giron ("Giron"), Jaime Mery ("Mery") and Bernardo Londono ("Londono"). All of the passengers were subsequently arrested with Rodriguez. Law enforcement officers found a kilogram brick of cocaine in the red and black backpack. During a post-arrest search of the vehicle, which belonged to Londono, law enforcement officers found multiple baggies containing cocaine.

During his post-arrest interview, Londono identified Viator as his cocaine source and stated that Viator was in possession of kilogram quantities of cocaine and he had been selling cocaine for Viator since March 2011. As to the subject narcotics transaction, Londono stated he had met Viator the previous day, October 4, 2011, at a restaurant. After the meeting, Viator took Londono's car keys and put one kilogram of cocaine into Londono's vehicle. Londono stated that on October 5, 2011, he drove Mery, Giron and Rodriguez to the parking lot of Champs in Fort Lauderdale, Florida, the site of their arrest. Following his arrest, Londono made three recorded calls to Viator during which Viator inquired about receiving payment for the first kilogram of cocaine and discussions were had regarding additional sales of cocaine.

On the same date, October 5, 2011, Viator directed Londono to meet him at the Hyatt Hotel Pier 66 in Fort Lauderdale, Florida to receive payment for the first sale of cocaine. Law enforcement responded to the Hyatt Regency Hotel and observed a white male, fitting the description consistent with that of Viator, sitting in the lobby with a brown shoulder bag at his feet. Law enforcement approached Viator and identified themselves as law enforcement agents of the DEA. Viator gave the officers permission to look inside his bag and in the bag was a brick shaped object wrapped in plastic, which later tested positive for cocaine and weighed approximately one kilogram. Viator was then arrested. Viator

indicated that he wanted to cooperate with the officers and told them that he had additional kilograms of cocaine in his vehicle parked at a nearby hotel. Law enforcement officers transported Viator to his vehicle where four more kilograms of cocaine were recovered from an internal tool compartment.

During a post arrest statement, Viator told agents that he met Londono through a mutual friend while visiting Florida in 2010. Londono was introduced to Viator as a cocaine distributor in South Florida, at which time Viator agreed to supply cocaine to Londono. Viator stated he arrived in Fort Lauderdale, Florida, on October 2, 2011, for the purpose of selling Londono one kilogram of cocaine initially and had additional kilograms of cocaine if Londono was able to pay for them. Viator met with Londono in Fort Lauderdale on October 3, 2011. During that meeting, Viator told Londono he had five kilograms of cocaine for sale, but would only release one kilogram at a time as each kilogram was paid for. Viator told Londono the price per kilogram of cocaine was $25,000. Londono agreed and took receipt of the first kilogram of cocaine on consignment. Viator stated that he  actually had a total of six kilograms of cocaine, just in case it was needed, but told Londono he only had five.

According to the DEA laboratory reports, the net weight of the cocaine seized from Rodriguez was 1,008 grams with a 81.5% purity. The net amount of cocaine seized from Viator was 5,020 grams with an average purity of 78.7%.

B. <u>Indictment, Plea Agreement and Change of Plea Proceedings</u>

By Indictment returned on October 20, 2011, Viator was charged with the offense of conspiring to possess with the intent to distribute more than 500 grams of cocaine, in violation of Title 21, United States Code, Sections 846 and 841(a)(1) (Count 1), and

possessing with the intent to distribute more than 5 kilograms of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A) (Count 3). (Cr-DE# 24). Viator subsequently entered into a negotiated written plea agreement with the government whereby he agreed to enter a plea of guilty to the crime charged in Count 3 of the Indictment and the government agreed to dismiss Count 1. See Plea Agreement at ¶¶1, 2. (Cr-DE# 78).

By executing the written plea agreement, Viator acknowledged his understanding that the Court could impose any sentence within and up to the statutory maximum after consideration of the advisory sentencing guidelines range and other factors, and that he could not withdraw his plea solely as a result of the sentence imposed. Id. at ¶3. He further indicated that he understood he faced a ten-year minimum mandatory term of imprisonment and a maximum penalty of life imprisonment which term was to be followed by a minimum term of supervised release of five years up to a maximum term of life. Id. at ¶4. The agreement went on to provide that the government agreed to recommend a two-point reduction for Viator's acceptance of responsibility pursuant to U.S.S.G. §3E1.1(a), subject to various conditions, and an additional one-point reduction pursuant to U.S.S.G. §3E1.1(b), if Viator's offense level was sixteen or greater. Id. at ¶¶7, 8. The government was, however, not required to make the motion if Viator committed any misconduct after entering into the plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official. Id. at ¶7.

By entering into the agreement, Viator agreed to fully cooperate with the government and he acknowledged that the government reserved the right to evaluate the nature and extent of

his cooperation and to make that cooperation, or lack thereof, known to the Court at the time of sentencing. Id. at ¶¶8, 9. Viator was advised that if in the sole and unreviewable judgment of the government, his cooperation was of such quality and significance to the investigation or prosecution of other criminal matters as to warrant a downward departure from the advisory sentencing guidelines range or minimum mandatory term, the government may make a motion before sentencing pursuant to U.S.S.G. ¶5K1.1 and/or 18 U.S.C. §3553 or after sentencing pursuant to Fed.R.Crim.P. 35, alerting the Court to his substantial assistance and recommending a sentence reduction. Id. at ¶9. Viator acknowledged that he understood that the government was not required to file any such motions, and that the government's assessment of the quality and significance of the cooperation was binding as it related to the appropriateness of the filing or non-filing of a motion to reduce sentence. Id. at ¶10.  By entering into the written plea agreement, Viator also agreed to waive his right to a direct appeal from his sentence and waive any collateral attack upon his conviction or sentence, except in very limited circumstances. Id. at ¶15. Viator stated that by signing the agreement, he acknowledged that he had discussed the appeal/collateral attack rights set forth in the agreement with counsel. Id.

On the date that the plea agreement had been executed by all parties, change of plea proceedings were conducted. See Transcript of Change of Plea conducted on December 28, 2011. (Cr-DE# 126; Cv-DE# 14-1). The Court conducted a careful and meticulous plea colloquy pursuant to Fed.R.Crim.P. 11 during which Movant was sworn. Id. Upon questioning from the Court, Movant stated that he had received a copy of the Indictment and had discussed the charges and the case with his attorney. Id. at 4. When asked if he was satisfied with the representation and advice given to him in this case by his attorney, Viator answered: "Yes sir, I am." Id. at 4-5.

Viator told the Court that he had read and discussed the written plea agreement with counsel before executing it, that he understood all provisions contained in the agreement, and that the agreement represented in its entirety the understanding that he had with the government. Id. at 8-9. The Court reviewed with Movant the penalties he faced for having committed the subject offense, and he stated that he understood the maximum possible penalties. Id. at 5. Movant further told the Court that he had not been forced to change his plea to guilty and that he was doing so of his own free will. Id. at 9. Movant also assured the Court that he had discussed with counsel how the sentencing guidelines applied to his case and that he understood that the Court had the authority to depart from the sentencing guidelines. Id. at 7.

Viator was advised of the constitutional rights he was waiving by entering the guilty pleas, and he indicated he understood and agreed to waive those rights. Id. at 10-12. In pertinent part, the following colloquy was conducted regarding Viator's waiver of his right to a direct appeal and right to pursue collateral proceedings:

> THE COURT:     Now, Paragraph 15 of the plea agreement contains what is commonly referred to as an appellate waiver and I'd like to review with you the pertinent language contained in Paragraph 15 to make certain that you understand the rights that you're giving up therein.
>
> Do you understand that in exchange for certain promises made by the Government, that you are agreeing to waive, that means to give up your right, to appeal any sentence imposed, including any restitution order or to appeal the manner in which the sentence was imposed or to collaterally attack the conviction pursuant to Title 28, United States Code, Sections 2255, 2243, 2241, or any other applicable provision unless the sentence exceeds the maximum permitted by statute?

THE DEFENDANT:   Yes sir, I understand.

THE COURT:       Have you fully -- do you understand that should the Government elect to appeal this Court's sentence, you would be released from that appellate waiver and under those circumstances, you could appeal this Court's sentence?

THE DEFENDANT:   Yes sir, I understand.

THE COURT:       Now, have you fully discussed the appellate waiver with your attorney, Mr. Geisser?

THE DEFENDANT:   Yes, we have.

THE COURT:       Do you have any questions regarding the legal effect of the appellate waiver provision?

THE DEFENDANT:   No, Your Honor, I don't.

THE COURT:       Understanding the legal effect of the appellate waiver, is it still your desire to go forward with this plea agreement and to go forward with the entry of a guilty plea to Count 3 of the indictment?

THE DEFENDANT:   Yes, sir.

Id. at 9-10.

Viator told the Court that he had executed the written factual proffer and that the facts contained therein were accurate. Id. at 12. After indicating to the Court that he had no questions of the Court, Viator was asked by the Court how he pled to the subject offense. Id. at 13. Viator answered: "Guilty." Id. The Court then found that Movant was fully competent and capable of entering an informed plea, that Movant was aware of the nature of the charge and the consequences of the plea, and that the plea was a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. Id. at 13. The plea of guilty was, therefore, accepted and Viator was adjudged guilty of the offense charged in Count 3 of the

Indictment. <u>Id</u>. <u>See also</u> Cr-DE# 118.

C. <u>Presentence Investigation Report, Sentence Proceedings and Motion to Correct Sentence</u>

As determined by the Probation Officer, Movant's base offense level was 32 pursuant to the U.S.S.G. §2D1.1(a)(5) in that the offense involved the possession with intent to distribute at least 5 kilograms of cocaine but less than 15 kilograms of cocaine in violation of 21 U.S.C. §841(a)(1). <u>See</u> PSI at ¶29. With no adjustments applied, the adjusted offense level was, therefore, 32. <u>Id</u>. at ¶34. Because Viator had not provided a statement for acceptance of responsibility and because Viator had been arrested for a new offense on February 10, 2012,[2] the Probation Officer did not recommend a reduction for acceptance of responsibility pursuant to U.S.S.G. §3E1.1(a) since Viator had not withdrawn from his criminal conduct. <u>Id</u>. at ¶¶27, 36, 45, 86. The government also indicated to the probation officer that Viator had not satisfied the criteria provided in U.S.S.G. §5C1.2 or 18 U.S.C. §3553(f)(1)-(5). <u>Id</u>. at ¶28. Accordingly, Movant had a total offense level of 32. <u>Id</u>. at ¶37. Movant had zero criminal history points and a criminal history category of I, resulting in a sentencing guidelines range of 121 to 151 months' imprisonment. <u>Id</u>. at ¶¶43, 77. The statutory minimum term of imprisonment was ten years and

_____

[2]Viator was arrested by Lafayette, Louisiana police officers for manufacturing and passing counterfeit currency. Viator was identified as the suspect who passed five counterfeit twenty dollar notes on February 5, 2012, during the Superbowl game at a bar where he frequented. Viator attempted to pass another counterfeit twenty dollar note at the same bar on February 10, 2012, at which time the manager called the police. A consensual search of Viator's residence produced a scanner/printer, shredder containing shredded money-looking paper, a paper cutter, two genuine $100 notes taped and measured off on copy paper hidden in a file, ink cartridges, and copy paper, which resulted in counterfeit plant suppression. Viator admitted to manufacturing the counterfeit notes and he was arrested. On February 13, 2012, SA Norris met Viator at the police department for an interview regarding the counterfeit arrest. After waiving his constitutional rights, Viator admitted that he had printed counterfeit notes. Specifically, he manufactured approximately 12-15 one hundred dollar notes, which he shredded, and manufactured approximately $300 worth of twenty dollar counterfeit notes which he passed at various businesses located in Lafayette, Louisiana.

the maximum term was life pursuant to 21 U.S.C. §841(b)(1)(A). Id. at ¶76. Viator faced a term of supervised release of at least five years. Id. at ¶¶78, 79. Viator filed no objections to the PSI.

Sentencing took place on March 30, 2012. See Transcript of Sentencing. (Cv-DE# 8-1). The government recommended sentencing at the high end of the advisory sentencing guidelines. Id. at 3-6. The government provided the Court with extensive argument justifying its recommendation. Id. The government explained that Viator and the government had agreed that Viator could be released on bond to cooperate with and work under the direction of the DEA. Id. at 3-4. The extraordinary decision to permit release was arrived at based upon Viator's willingness to cooperate with the government from the time of his arrest and because, as a result of his cooperation, a significant amount of cocaine had been seized. Id. Due to Viator's cooperation, the government had decided against filing a §851 enhancement based upon Viator's prior trafficking conviction, thereby, forgoing a twenty-year mandatory minimum sentence and limiting the minimum mandatory to ten years' imprisonment. Id. at 4-5.

The government went on to inform the Court that there had been a clear understanding between the government and Viator that if Viator were to commit any offense, no matter how minor, during his lengthy release time, he would get no credit whatever for any of his cooperation. Id. The government told the Court that while Viator was out on bond and supposedly cooperating and being a law-abiding citizen, he manufactured money and attempted to pass it. Id. at 5. Based upon his illegal conduct, the DEA immediately stopped working with Viator and he was arrested and returned to the

jurisdiction of this Court, where he remained confined.[3] <u>Id</u>. The
government went on to point out that due to Viator's failure to
comply with the conditions of his bond, it could have filed a
motion for obstruction of justice which would have resulted in a
two-level increase in Viator's base offense level, but it chose not
to do so. <u>Id</u>. at 5-6. Rather, the government believed sentencing at
the high end of the guidelines would appropriately punish Viator
for his subsequent criminal behavior. <u>Id</u>. at 5-6. The government
also candidly noted that it would not be filing a 5K or Rule 35
motion on Viator's behalf. <u>Id</u>. at 6.

Trial counsel requested sentencing at the bottom of the
advisory sentencing guidelines, a term of imprisonment of 121
months which was essentially the minimum mandatory term. <u>Id</u>. at 7-
10. Trial counsel argued that Viator entered into the plea
agreement with the government with the understanding that he would
receive the minimum mandatory sentence if the government did not
file a Rule 35 or 5K motion. <u>Id</u>. at 7. Counsel opposed the
government's assertion that Viator had not provided substantial
assistance, stating that Viator from the time of his arrest had
fully cooperated with the government. <u>Id</u>. at 7, 10. Counsel stated
that immediately upon his arrest, he directed DEA agents to his
nearby vehicle where he produced five additional kilograms of
cocaine hidden in his car, relieving the agents of obtaining a
search warrant and efforts to locate the hidden cocaine. <u>Id</u>. at 10.
He also told the Court that Viator spent time contacting thirteen
different individuals, including eight from international
countries, requiring him to spend his own money for cellular

---

[3]Upon questioning from the Court, it was revealed that the Secret Service
had investigated the counterfeiting activity and the federal government had at
that time decided against prosecuting Viator on federal offenses on the basis
that the prosecution threshold had not been met in that only four or five bills
had been passed, but he had been charged in the Louisiana state court for state
offenses regarding passing counterfeit bills. (Transcript of sentencing at 7-
9)(DE# 8-1).

telephone calls to individuals in Mexico, Belize, and the Dominican Republic. Id. Counsel further stated that Viator not only cooperated with the DEA in this District, but he also assisted the DEA in Louisiana, resulting in the return of indictments in Louisiana or enough evidence for the government to obtain indictments in Louisiana. Id. at 7, 10. Counsel indicated that he had several witnesses who could confirm Viator's substantial assistance. Id. at 10.

Viator then personally addressed the Court, first apologizing for his criminal conduct, explaining that he engaged in such behavior out of desperation in that he was forced to close his oil field service company as a result of the BP oil spill. Id. at 10-11. He next requested the Court to credit him with his substantial assistance. Id. at 11. When the Court expressed its concern for the counterfeiting crimes committed while he was out on bond, Viator responded: "It was a small amount. I don't know why I did it." Id. at 12. Immediately before the Court was about to pronounce sentence, trial counsel requested to call as a defense witness a DEA agent who was to testify regarding the substantial assistance performed. Id. The government responded that it would accept as truthful the proffer as to what Viator had done for the DEA in both jurisdictions, but expressed concern that Viator's subsequent arrest compromised the information provided to the agents. Id. Although the Court indicated that it would honor the agreement and accept the proffer as true, trial counsel took objection to the government's characterization of the information provided and informed the Court that he could present the DEA agent to testify as to that issue. Id. at 12-13. The Court ruled that testimony from the witness was not needed, stating: "I am incensed that someone who is placed on pretrial release and goes out and commits another substantive crime, I don't see how I can give him a benefit at this point....I mean, to go out and engage in counterfeit[ing] while you

are on bond, there is no excuse, I'm sorry, none whatsoever." <u>Id</u>. at 13. The Court went on to state that it agreed with the government that an obstruction charge could have been pursued as will as a request for an upward variance. <u>Id</u>. The Court, therefore, found that the government's request for a sentence at the top of the guidelines was reasonable. <u>Id</u>.

After considering the statements of all parties, the pre-sentence report which contained the advisory guidelines, as well as, the factors set forth in 18 U.S.C. §3553(a), and the need for adequate punishment and deterrence, the Court imposed a sentence at the top of the advisory sentencing guidelines as "a result of Mr. Viator's conduct while on pretrial release having committed another substantive crime and having admitted to doing so." <u>Id</u>. at 14. Viator did not prosecute a direct appeal from his conviction or sentence.

### D. <u>Postconviction Proceedings</u>

Approximately five months after Judgment had been entered, Viator filed the instant <u>pro se</u> motion to vacate pursuant to 28 U.S.C. §2255. (Cv-DE# 1). The government has filed a response to the motion, asserting that Movant is not entitled to §2255 relief in that he has waived the right to challenge his sentence in this collateral proceeding, his claims are procedurally barred, and the claims are meritless.[4] (Cv-DE# 7).

### IV. <u>Standard of Review</u>

Pursuant to 28 U.S.C. §2255, a prisoner in federal custody may move the court which imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper

---

[4] The government appropriately concedes that the instant motion to vacate has been timely filed. <u>See</u> 28 U.S.C. §2255(f).

jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. §2255. In determining whether to vacate a movant's sentence, a district court must first determine whether a movant's claim is cognizable under Section 2255. See Lynn v. United States, 365 F.3d 1225, 1232-33 (11th Cir. 2004)(stating that a determination of whether a claimed error is cognizable in a Section 2255 proceeding is a "threshold inquiry"), cert. denied, 543 U.S. 891, 125 S. Ct. 167, 160 L. Ed. 2d 154 (2004). It is well-established that a Section 2255 motion may not be a substitute for a direct appeal. Id. at 1232 (citing United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593, 71 L.Ed.2d 816 (1982)).

The Eleventh Circuit promulgated a two-part inquiry that a district court must consider before determining whether a movant's claim is cognizable. First, a district court must find that "a defendant assert[ed] all available claims on direct appeal." Id. (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994). Second, a district court must consider whether the type of relief the movant seeks is appropriate under Section 2255. This is because "[r]elief under 28 U.S.C. §2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." Id. at 1232-33 (quoting Richards v. United States, 83 F.2d 965, 966 (11th Cir. 1988)(internal quotations omitted)). If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. §2255. To obtain this relief on collateral review, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." Frady, 456 U.S. at 166, 102 S.Ct. at 1584 (rejecting the plain error standard as not sufficiently deferential to a final judgment).

14

Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. See Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)(explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous"). For the reasons stated herein, the claims raised are procedurally barred, not cognizable, or without merit. Consequently, no evidentiary hearing is required. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979).

## V. Discussion

In this collateral proceeding, Viator attacks the lawfulness of his sentence on the three grounds enumerated above. The government correctly argues that the claims challenging the sentences imposed as an erroneous application of the sentencing guidelines are procedurally barred from postconviction review on the merits.

As indicated, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Massaro v. United States, 538 U.S. 500 (2003). See also United States v. Frady, 456 U.S. 152 (1982); Lynn v. United States, 365 F.3d 1225,

1234-35 (11th Cir. 2004). Absent a showing that the ground of error
was unavailable on direct appeal, a court may not consider the
ground in a section 2255 motion unless the defendant establishes
(1) cause for not raising the ground on direct appeal and actual
prejudice resulting from the alleged error or (2) actual innocence.
Lynn, 365 F.3d at 1234; Bousley v. United States, 523 U.S. 614,
622-3 (1998). See also Jones v. United States, 153 F.3d 1305 (11th
Cir. 1998)(finding that cause and prejudice was not available to
movant as a means of avoiding procedural default, but recognizing
that actual innocence might still be a viable option); Campino v.
United States, 968 F.2d 187, 189-90 (2d Cir. 1992)("[A] procedural
default of even a constitutional issue will bar review under
Section 2255, unless the petitioner can meet the 'cause and
prejudice' test").

        The claims now raised by the movant with regard to the
lawfulness of his sentence were not raised on direct appeal. As an
attempt to escape the procedural bar, Viator appears to assert that
counsel was ineffective for failing to pursue the particular
sentence challenges on direct appeal. The claim of ineffective
assistance of counsel may constitute cause for a procedural
default. See generally Murray v. Carrier, 477 U.S. 478 (1986).
"[An] ineffective-assistance-of-counsel claim can serve as cause to
excuse the procedural default of another habeas claim only if the
habeas petitioner can satisfy the 'cause and prejudice' standard
with respect to the ineffective-assistance claim itself." Edwards
v. Carpenter, 529 U.S. 446, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518
(2000). See also United States v. Breckenridge, 93 F.3d 132, 134
n.1 (4th Cir. 1996).

        However, the Eleventh Circuit has held that "a valid sentence-
appeal waiver, entered into voluntarily and knowingly, pursuant to
a plea agreement, precludes the defendant from attempting to

attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing." <u>Williams v. United States</u>, 396 F.3d 1340, 1342 (11th Cir. 2005); <u>see also</u>, <u>Leach v. United States</u>, 171 Fed.Appx. 765 (11th Cir. 2006); <u>Johnson v. United States</u>, 2007 WL 4615236 *5-6 (S.D. Fla. 2007). As concluded correctly by the *Williams* court, to hold otherwise would permit the movant "to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." <u>Williams v. United States</u>, <u>supra</u>. <u>See also United States v. Pipitone</u>, 67 F.3d 34 (2d Cir. 1995)(holding that a defendant's waiver of right to appeal sentence pursuant to guilty plea cannot constitute "cause" for procedural default in that to do so would circumvent the plea agreement and turn the cause requirement "on its head"). A waiver is knowing and voluntary if 1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or 2) the record demonstrates that the defendant understood the full significance of the waiver. <u>Williams</u>, <u>supra</u>.

The appeal-waiver in this case was clearly knowingly made. The executed plea agreement expressly provided that Viator and counsel had discussed the appeal waiver set forth in the agreement. During the change of plea proceeding, Viator acknowledged while under oath that he had read and discussed with counsel all terms and conditions of the written plea agreement before he executed the agreement and that he had understood all terms and conditions. The movant further acknowledged that he was satisfied with counsel's representation and advice. The movant additionally told the Court during the plea colloquy that he understood that, as part of the plea agreement, he was giving up his right to appeal the sentence and the right to pursue any collateral attack with regard to the sentence imposed. The Court thoroughly and fully reviewed with Viator the appeal waiver and during the colloquy Viator stated that

17

he had discussed the waiver with trial counsel, he understood the legal effect of the appellate waiver, and he had no questions for the Court with regard to the waiver. When this Court asked Viator whether it was his desire to go forward with the plea agreement and entry of a guilty plea as to Count 3 of the Indictment, knowing that the agreement contained the appellate waiver, Viator unequivocally responded in the affirmative. It is noted that Viator denied being coerced or threatened into changing his plea. After the extensive colloquy, the change of plea was found to have been freely, voluntarily and intelligently made.[5] It is also noted that Viator never indicated to the Court during sentencing that he had reconsidered the appellate waiver provision of the plea agreement.

Thus, the appellate waiver was clearly knowing and voluntary. There is nothing of record to suggest that the movant did not understand the significance of the waiver of appeal and collateral rights and did not intend to waive these rights. The record reveals that the waiver did not result in an unlawful denial of his right to appeal or pursue collateral proceedings, but was rather a part of a lawful, enforceable agreement between the movant and the government. Consequently, the claims raised herein challenging the lawfulness of the sentence, and any related ineffective assistance of counsel claim Viator may be raising where he faults counsel for failing to pursue the claims now raised on direct appeal, are covered by the appeal waiver and therefore not subject to

---

[5]Viator's representations during the plea proceeding, as well as those of his lawyer and the findings by this Court when accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Solemn declarations in open court carry a strong presumption of truthfulness, and a defendant bears a heavy burden to show that the plea was involuntary after testifying to its voluntariness in open court. <u>DeVille v. Whitley</u>, 21 F.3d 654, 659 (5th Cir. 1994). <u>See also</u> <u>United States v. Lemaster</u>, 403 F.3d 216, 221-222 (4th Cir. 2005)("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any §2255 motion that necessarily relies on allegations that contradict the sworn statements.").

collateral attack in this proceeding. <u>Williams</u>, <u>supra</u>.

Moreover, Viator's claims that his sentence was imposed in violation of the sentencing guidelines are not reviewable on the merits on an alternate basis. Sentencing errors are generally not cognizable in a collateral attack unless the error complained of resulted in a complete miscarriage of justice. <u>See e.g.</u>, <u>Burke v. United States</u>, 152 F.3d 1329 (11th Cir. 1998)(holding that nonconstitutional claims, such as the claim that a sentence was contrary to a subsequently enacted clarifying sentencing guidelines amendment, can be raised on collateral review of a conviction only when the alleged error constitutes a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure); <u>United States v. Segler</u>, 37 F.3d 1131, 1134 (5th Cir. 1994)(stating that, "[a] district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under §2255."). <u>See also</u> 28 U.S.C. §2255(a); <u>Gilbert v. United States</u>, 640 F.3d 1293, 1321 (11th Cir. 2011)("Gilbert III")(*en banc*)(stating that "Gilbert's claim that a sentencing guidelines provision was misapplied to him is not a constitutional claim. If it were, every guidelines error would be a constitutional violation.").[6]

Since Viator was afforded due process at the sentencing hearing and has not demonstrated a constitutional violation or an error which resulted in a "complete miscarriage of justice," his

---

[6]It is noted that the Eleventh Circuit in *Gilbert* explicitly did not address the issue whether a guidelines misapplication claim based on a new Supreme Court rule is cognizable in an initial collateral attack. The Eleventh Circuit concluded that it had "no reason to decide that issue because this is not [the defendant]'s first collateral attack on his sentence." <u>Gilbert v. United States</u>, 640 F.3d 1293, 1306 (11th Cir. 2011).

challenges to his sentence are not cognizable in this proceeding.[7] Viator faced a mandatory minimum term of 120 month's imprisonment and a maximum term of life imprisonment. His advisory sentencing guideline range was 121 to 151 months' imprisonment. Viator was sentenced to a 151-month term of imprisonment. The sentence imposed was within the guideline range, well-below the statutory maximum term of life imprisonment, reasonable under all the circumstances of this case, and not violative of any constitutional principles.

Even if Viator were entitled to review on the merits of his sentence attacks raised here, he would not be entitled to postconviction relief since his attacks are meritless. Viator first alleges that he was entitled to receive a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. §3E1.1, because he was never charged or convicted of the counterfeit offense. After the entry of his guilty plea, Viator committed a new federal and/or state offense when he manufactured and passed counterfeit currency at approximately seven different businesses located in Lafayette, Louisiana. Viator admitted committing the offense during an interview by the United States Secret Service and before this Court during sentencing. Further, Viator never submitted before sentencing the requisite statement for acceptance of responsibility. And, Viator continued to engage in criminal activity following the entry of his guilty plea, resulting in the violation of the terms of his release. For all these reasons,

---

[7]Viator appears to assert in his reply that he was denied due process at sentencing, because the Court did not permit trial counsel to call witnesses in his behalf to offer testimony as to the specifics of his substantial assistance and, if counsel had been permitted to do so, his sentence would be lower. See Reply at 7-8. (Cv-DE# 20). This assertion is meritless. Even if the prospective witness would have testified as to the substantial assistance performed by Viator as proffered by trial counsel at the hearing or now described by Viator, this Court's sentence would nevertheless have remained the same. Viator would not have received any reduction in his sentence for acceptance of responsibility in that any such testimony would not have changed the fact that Viator committed unlawful acts while he was on pretrial release. And, as pointed out by the Court, his sentence might have been greater if the government had pursued a a request for an upward variance or enhanced sentencing for obstruction of justice.

Viator was not entitled to a three-level reduction of his offense
level even if he was never convicted of the unrelated criminal
conduct. See United States v. Scroggins, 880 F.2d 1204, 1215–16
(11th Cir. 1989)(holding that a district court may consider
subsequent criminal conduct in deciding whether a decrease pursuant
to U.S.S.G. §3E1.1 was appropriate); see also U.S.S.G. §3E1.1, cmt.
n. 1(b) (noting that the district court may consider the
defendant's "voluntary termination or withdrawal from criminal
conduct or associations"); Plea Agreement at ¶7.

Movant also alleges that he is entitled to receive a 16 level
reduction under U.S.S.G. §5K1.1 for assistance he asserts he
supplied to the government, and that the failure of the government
to file the motion is an abuse of discretion. Section 5K1.1 of the
Sentencing Guidelines provides that "[u]pon motion of the
government stating that the defendant has provided substantial
assistance in the investigation or prosecution of another person
who has committed an offense, the court may depart from the
guidelines." U.S.S.G. §5K1.1. Here, the terms of the plea agreement
provided that the government would evaluate the nature and extent
of Viator's cooperation and that it was "in the sole and
unreviewable judgment of [the United States Attorney's] Office [for
the Southern District of Florida]" whether such cooperation
warranted a 5K1.1 motion for downward departure from the advisory
sentencing range calculated under the Sentencing Guidelines and/or
any applicable minimum mandatory sentence. See Plea Agreement at
¶9. When he executed the plea agreement, Viator indicated that he
understood that the agreement did not require the government to
file any such motion. Id.

The plea agreement in this case contains no terms which
obligate the government to file a 5K1.1 motion. In such a
situation, the government has the power, but not the duty, to file

21

a substantial assistance motion. <u>Wade v. United States</u>, 504 U.S. 181, 185, 112 S.Ct. 1840, 1843, 118 L.Ed.2d 524 (1992)(involving substantial assistance motion under U.S.S.G. §5K1.1 and 18 U.S.C. §3553(e)). The government retains discretion whether to seek a reduced sentence based upon the cooperation. See <u>United States v. Courtois</u>, 131 F.3d 937, 938 (10th Cir. 1997)("Even if a defendant undeniably renders substantial assistance, the government retains discretion to decide whether to request a §5K1.1 downward departure."); <u>United States v. LeRose</u>, 219 F.3d 335, 342-43 (4th Cir. 2000)("Explanations of the extent of a defendant's assistance do not entitle a defendant to a hearing.").

Thus, even when the government indicates that it would consider whether any cooperation on the part of the defendant qualified as substantial assistance and the defendant does cooperate, in order to obtain relief, the defendant needs to make a substantial showing that the prosecution refused to file a substantial assistance motion because of a constitutionally impermissible motivation, such as race or religion. <u>Wade</u>, 504 U.S. at 185-86, 112 S.Ct. at 1843-44. Viator has failed to do so in this case. He merely asserts that the government relied upon his counterfeiting activity as the reason not to file a substantial assistance motion, which Viator contends is an improper motive. He is mistaken. Therefore, the government cannot be compelled by Viator to file any such motion regardless of whether he did in fact provide substantial assistance. <u>United States v. Bell, a.k.a. St. Pete Red</u>, 465 Fed. Appx. 892, 894-95 (11th Cir. 2012)(finding that even a district court does not have authority to compel the government to file motion to reduce sentence based on defendant's substantial assistance). <u>See also</u> <u>United States v. Acevedo</u>, 2009 WL 297711 (11th Cir. 2009)(unpublished).

Viator also maintains that he is entitled to a reduction of his sentence pursuant to U.S.S.G. §1B1.10 under the 18:1 and 100:1

method announced in <u>Dorsey v. United States</u>,[8] ___ U.S. ___, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012)(stating that the Fair Sentencing Act "had the effect of lowering the 100-to-1 crack-to-powder ratio to 18-to-1" and holding that "Congress intended the Fair Sentencing Act's new, lower mandatory minimums to apply to the post-Act sentencing of pre-Act offenders."). Under Section 1B1.10 a defendant may be entitled to a reduction in his term of imprisonment where a sentencing guideline range applicable to the defendant has subsequently been lowered. Viator's reliance on this provision and *Dorsey* is, however, misplaced.

The Fair Sentencing Act of 2010, which reduced the crack-to-powder cocaine disparity from 100-to-1 to 18-to-1, applies to offenders who committed a crack cocaine crime. <u>Dorsey</u>, <u>supra</u>. The FSA statutorily changed the threshold quantities of *crack* cocaine that trigger mandatory minimum sentences under 21 U.S.C. §841(b) — it did not change the statutory mandatory minimum for *powder* cocaine. Here, Viator's offense involved at least 5 kilograms but less than 15 kilograms of *powder* cocaine. <u>See</u> PSI at ¶29. *Dorsey* is, therefore, inapplicable.[9] Further, at the time Viator was sentenced, the offense level for crimes involving at

---

[8]Viator incorrectly refers to the case as "<u>Dorcy v. United States</u>."

[9]Before the Fair Sentencing Act ("FSA") was signed into law on August 3, 2010, distribution of 5 grams or more of crack cocaine triggered the application of a statutory mandatory minimum sentence of 5 years' imprisonment and a maximum sentence of 40 years' imprisonment. 21 U.S.C. §841(b)(1)(B)(iii) (2009). The FSA changed the crack-to-powder cocaine ratio from 100-to-1 to about 18-to-1. <u>Dorsey v. United States</u>, 567 U.S. ___, ___, 132 S.Ct. 2321, 2326 (2102). The FSA also amended the sentencing provisions in 21 U.S.C. §841(b)(1) by raising from 5 grams to 28 grams the amount of crack cocaine necessary to trigger the 5-year mandatory minimum sentence and 40-year maximum sentence. Fair Sentencing Act of 2010, Pub.L. No. 111-220 §2(a), 124 Stat. 2372 (2010). Under the FSA, where a defendant has distributed less than 28 grams of crack cocaine, a maximum sentence of 20 years' imprisonment applies. See 21 U.S.C. §841(b)(1)(C). On June 21, 2012, the Supreme Court held in *Dorsey* that the FSA's reduced statutory mandatory minimums apply to defendants who committed crack cocaine offenses before August 3, 2010, but were sentenced after the date the FSA went into effect. <u>Dorsey</u>, 132 S.Ct at 2326.

least 5 kilograms but less than 15 kilograms of powder cocaine was 32. Id. The offense level for such crimes remains 32. See U.S.S.G. §2D1.1(4). Viator's base offense level was thus correctly calculated at the time of his sentencing based on the amount of powder cocaine involved in the offense and his sentence remains lawful.

It is noted that Viator appears to allege in his reply that the government breached the terms of the plea agreement when it failed to move the Court to reduce the offense level based upon acceptance of responsibilty and when it did not file a 5K1.1 motion. Viator claims that the government was bound to fulfill its contractual obligation. For support, he relies upon the Supreme Court's decision in Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). It is well established that a government promise which is part of the inducement for a guilty plea must be fulfilled. See Santobello, 404 U.S. at 262. In determining whether a plea has been wrongfully induced, it is important to remember that the government is only held to those promises that it actually made. See United States v. Peglera, 33 F.3d 412, 413 (4th Cir. 1994). As indicated by the record, no such breach occurred here in that Viator was not entitled to the three-level reduction for acceptance of responsibility for the reasons stated above. Viator did not receive the benefit of acceptance of responsibility not due to any breach by the government, but due to his subsequent unlawful behavior. Viator has no one to blame, but himself. Further, as stated, the government had no duty to file a 5K1.1 motion even if Viator had in fact provided all the substantial assistance he claims he provided as set forth in his reply and even if the agents praised him for all his efforts, as he now maintains. See Reply at 4-5, 7, 10-11. (Cv-DE# 20).

## VI. Certificate of Appealability

As amended effective December 1, 2009, §2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2255 Proceedings, Rule 11(b), 28 U.S.C. foll. §2255.

After review of the record, Movant is not entitled to a certificate of appealability. "A certificate of appealablilty may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Id. 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Movant must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. Slack v. McDaniel, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). See also Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims raised have been waived by the direct appeal/collateral attack waiver, are procedurally barred and/or clearly without merit, Movant cannot satisfy the *Slack* test. Slack, 529 U.S. at 484.

As now provided by Rules Governing §2255 Proceedings, Rule 11(a), 28 U.S.C. foll. §2255: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

VII. <u>Conclusion</u>

25

Movant has failed to demonstrate that his sentence is unlawful, entitling him to relief. It is therefore recommended that this motion to vacate be DENIED, and no certificate of appealability should issue.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 16th day of May, 2013.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Richard Viator, <u>Pro</u> <u>Se</u>
    Reg.No. 97464-004
    FCI-Oakdale
    P.O. Box 5050
    Oakdale, LA 71463

    Julia J. Vaglienti, AUSA
    U.S. Attorney's Office
    500 East Broward Boulevard, 7th Floor
    Fort Lauderdale, FL 33394